IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 7:23CV00809 |
| | ) | |
| PHILIP ATETO, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

Defendants Philip Ateto, Barkha Bhandari, Joel Davis, Kidus Girma, Klea Hazizaj, Devora Klionsky, Christian Shushok, Sloan Touchet, Brynn Cassidy West, and Ashley Stecher Wagner ("Defendants") have moved pursuant to Federal Rule 12(b) of Civil Procedure to dismiss the complaint filed against them by Plaintiff Mountain Valley Pipeline, LLC ("MVP"). In support of their Motion to Dismiss, the Defendants submit the following memorandum.

**I.    LACK OF SUBJECT MATTER JURISDICTION.**

When a federal court determines an absence of subject-matter jurisdiction, it must dismiss the complaint. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) and F ED. R. C IV. P. 12(b)(1). Here, Plaintiff invokes federal question jurisdiction pursuant solely to 28 U.S.C. § 1331, claiming that its four counts "arise under the Constitution, laws, or treaties of the United States." Dkt. 1, ¶ 5. Counts Two and Three are state common law and statutory conspiracies to commit Count One, respectively, and any federal question in Count Two or Three would have to be derived from a federal question in Count One. Thus, if Count One fails to raise a federal question, the entire Complaint must be dismissed for lack of subject matter jurisdiction.

For a court to have federal question jurisdiction over a state law claim, the state law claim must present a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court 'without disrupting Congress's intended division of labor between state and federal courts.'" *Old Dominion Elec. Coop v. PJM Interconnection, LLC*, 24 F. 4th 271, 288 (4th Cir. 2022), *cert. Denied.*, 143 S. Ct. 87, 214 L. Ed. 2d 15 (2022) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

The first count of MVP's Amended Complaint charges Defendants with interfering with MVP's easement rights, through "violat[ing] the rights of MVP under the Right of Way Grant and Temporary Use Permit and Closure Order."[1] (Am. Compl. ¶ 26.) Easement interference, to the extent that such a claim could even be brought by an easement holder against a third party as opposed to the servient landowner, requires the Court to examine (1) what rights and duties the easement creates and (2) whether a defendant's actions breached those duties in such "a manner that mere restoration of the right to use the property will not correct." *Ortiz v. Flattery*, 63 Va. Cir. 309, 2003 WL 22785031, *3 (Fairfax Co. Cir. Ct. 2003). Notably absent from the facial elements of an easement interference claim is a requirement that the Plaintiff prove the legal integrity of the process by which the easement was originally conveyed.

The undisputed source of an easement is not "necessarily raised" in a claim for "interference with easements" and is thus not an essential element of such a claim. The mere fact that MVP has previously engaged in federal permitting processes to obtain its easements does not

---

[1] As explained further in Section II(A), the Closure Order is not an easement but a federal law that provides no cause of action or right to MVP. Since the Closure Order does not provide MVP with actionable rights or any kind of easement, its inclusion in this Complaint cannot create for MVP a work-around to establish federal question jurisdiction that otherwise does not exist.

create federal elements in a state law claim that a defendant interfered with that easement. The Amended Complaint offers, gratuitously, that the "Right of Way Grant and Temporary Use Permit were issued pursuant to 30 U.S.C. § 185, and the Closure Order was entered pursuant to 16 U.S.C. § 551." (Am. Compl. ¶ 6.) Plainly, resolving the claims of easement interference would not require interpreting or applying 30 U.S.C. § 185 or 16 U.S.C. § 551.

The United States Court of Appeals for the Fourth Circuit found federal question jurisdiction absent in an action between an electric utility operating under a Federal Energy Regulatory Commission ("FERC") easement and a third party over the utility's easement rights. The Fourth Circuit vacated Judge Moon's exercise of federal question jurisdiction even though the easement was issued in connection with a project governed by FERC, a federal agency. In the words of the Fourth Circuit,

> A claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue. Accordingly, if even one theory for interpreting the flowage easement does not involve interpretation of federal law, the claim does not arise under federal law.

*Pressi v. Appalachian Power* Company, 842 F.3d 299, 304 (4th Cir. 2016) (internal citations omitted).

Much like the case just cited, the present action does not arise under federal law.

The fact that the easement here was obtained as a result of Plaintiff's participation in a federal administrative permitting process does not add a federal element to a cause of action otherwise grounded in state law. The easement was granted by the federal government. But the easement itself *is not a federal law*. The easement is merely a *property agreement* between the federal government and MVP, which should be analyzed under state property law because Count One is in essence a state law claim for interference with easements.

3

The events leading to the acquisition of MVP's easement rights from federal agencies are not necessarily in issue here. No federal question exists on the face of Plaintiff's Complaint, which therefore should be dismissed.

## II. FAILURE TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

<u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. To withstand a Rule 12(b)(6) challenge, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory assertions that the plaintiff is entitled to relief cannot stand in for specific factual allegations. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The Court must assume all well-pleaded factual allegations are true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The allegations supporting a complaint must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65. These allegations must "raise a right to relief above the speculative level." *Id*. Any "unwarranted inferences, unreasonable conclusions, or arguments" must not be taken into consideration when evaluating whether the plaintiff is plausibly entitled to relief. *E. Shore Markets, Inc. v. J.D. Associates Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000).

### A. COUNT ONE FAILS TO STATE A CLAIM FOR INTERFERENCE WITH AN EASEMENT UPON WHICH RELIEF MAY BE GRANTED

MVP claims that Defendants interfered with its easements and work authorization, citing two easements to which the Defendants are not a party and a closure order that is not an easement

or any kind of property agreement at all, but rather a federal rule devoid of any private rights of enforcement.

To the extent MVP believes (although does not explicitly state) that the Right of Way Grant and Temporary Use Permit (Am. Compl., Ex. 3 and 4) create a federal cause of action, MVP is incorrect. Neither the Right of Way Grant nor the Temporary Use Permit "display[] an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In any event, "[l]language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291.

Even if the Right of Way Grant or the Temporary Use Permit were construed to create private remedies for MVP, under Virginia law a claim of easement interference is only actionable against the servient landowner, not a third party. *Ortiz* recognizes the tort of interference with easements when such an action is brought by an easement holder *against the servient landowner*, reasoning that the easement "creates a burden on the servient tract" and a corresponding duty upon servient landowners that gives rise to a cause of action. 63 VA. Cir. 309, 2003 WL 27785031, at *3 (citing several authorities addressing disputes between easement holders and servient estates). *See also Marvin M. Brandt Revocable Trust v. U.S.*, 572 U.S. 93 (2014) ("An easement … obligates *the possessor* [of the land] not to interfere with the uses authorized by the easement.") (emphasis added). An easement does not create obligations on third parties; it is simply a "grant of a nonpossessory property interest that provides the easement holder permission to use another person's land." *Easement*, WEX Law Dictionary (2022). Defendants are not the servient landowners, and thus have no duty arising from MVP's easement that independently establishes tort liability for interfering with said easement.

5

Similarly, the Forest Service's closure order (Am. Compl., Ex. 5) appears to bestow the *federal government* with a right to exclude the public from MVP's easement and to prosecute those who violate the order. But the closure order does not supply MVP with any private right or cause of action. It does not provide MVP with any possessory interest in the easement at issue.

MVP cannot, as a matter of law, state a claim for interference with easements against Defendants who are not servient landowners or otherwise parties to those easements. Nor can MVP sustain a claim for interference with an easement using a federal Closure Order, which is not an easement.

### B.  COUNTS TWO AND THREE FAIL TO STATE CLAIMS FOR CONSPIRACY UPON WHICH RELIEF MAY BE GRANTED.

In Counts Two and Three, MVP sues to recover for injuries to its business interests on two, redundant conspiracy theories. Count Two is a common law conspiracy claim. (Am. Compl. ¶¶ 28-43.) Count Three remounts the same claim as a Virginia statutory conspiracy action. (Am. Compl. ¶¶ 44-48.) Neither is well pleaded, because both fail to allege the existence of a conspiratorial agreement and resulting damages, instead relying on conclusory statements and/or descriptions of activity that fail to plead the elements of conspiracy with particularity.

#### a.  Conspiracy claims require particularized pleading.

Statutory and common law conspiracy claims are subject to heightened pleading strictures. "Under Virginia law, both statutory and common law conspiracy claims must be pled with particularity and not mere conclusory language." *Thornlea Real Est. Ventures, LLC v. Va. CU Realty LLC*, 2021 Va. Cir. LEXIS 24, *11 (Culpeper County, Feb. 15, 2021); *accord*, *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 425 (E.D. Va. 2018).

"[L]ike fraud," Judge Cullen observed recently, conspiracy "also must be pleaded with

particularity." *NetTax, LLC v. Posso Pizza, Inc.*, 2024 U.S. Dist. LEXIS 13384, *30 (Jan. 24, 2024, W.D. Va.). Judge Cullen used a simile to illustrate the heightened pleading requirement for business conspiracy by referring to the heightened pleading requirement for fraud, which by no means constitutes a requirement that the object of a conspiracy must be fraud in order for particularized pleading requirements to apply. *Id.* Indeed, Virginia courts apply a heightened pleading standard for conspiracy even absent any allegations of fraud. *360 Painting, LLC v. Misiph*, 2023 U.S. Dist. LEXIS 121493, *23 (July 13, 2023, W.D. Va.) (Moon, J.) (holding, despite absence of fraud count, "Plaintiff must plead business conspiracy with particularity"); *GMS Indus. Supply v. G&S Supply, LLC*, 441 F. Supp. 3d 221, 237 (E.D. Va. 2020) (observing, in action not based on fraud, that "[e]ach type of conspiracy is subject to a heightened pleading requirement."); *see Danville Com. Indus. Storage, LLC v. Selective Ins. Co. of S.C.*, 2018 U.S. Dist. LEXIS 212502 (Dec. 18, 2018, W.D. Va.) (dismissing conspiracy claim under the *Iqbal* and *Twombly* standards because the claims were not pleaded with particularity); *TradeStaff & Co v. Nogiec*, 77 Va. Cir. 77 (Chesapeake 2008); *Darton Environmental, Inc. v. FJUVO Collections, LLC, et al.*, 332 F. Supp. 3d 1022, 1036 (W.D. Va. 2018) (quoting *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)); *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 U.S. Dist. LEXIS 163753, *32 (Aug. 30, 2021, W.D. Va.); *Azalea Spa & Nails, Inc. v. Zhidong Zhang*, 2023 U.S. Dist. LEXIS 203218 at *8 (Nov. 13, 2023, E.D. Va.); *Wilkinson v. St. Pierre*, 97 Va. Cir. 21, 25 (Chesterfield County 2017).

Therefore, the elements of the conspiracy claims must be pleaded with particularity. "According to Virginia common law, "the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to

accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Borg v. Warren*, 545 F. Supp. 3d 291, 321 (E.D. Va. 2021) (*citing Firestone v. Wiley*, 485 F. Supp. 2. 694, 703 (E.D. Va. 2007)). Similarly, a statutory conspiracy claim requires a plaintiff to establish "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business; and (2) resulting damage to the plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984).

MVP has failed to allege facts supporting particularized allegations of agreements and damages, and thus fails to state a claim for either common law or statutory conspiracy.

> **b. Count Two does not plead the elements of common law conspiracy with particularity; the Amended Complaint's mere recitation of conclusory statements are insufficient.**

Counts Two and Three do not satisfy this heightened pleading standard. MVP pleads no specific facts to establish a conspiratorial agreement between the Defendants with one another or with others to interfere with MVP's easements.

The facts alleged in the Amended Complaint that describe the conduct Defendants' engaged in which purportedly amounts to a conspiracy are as follows: that on October 16, 2023, defendants "entered the right of way," "surrounded equipment and blocked work in the right of way," and "supported" Defendant Wagner in "attach[ing] … to equipment on the right of way using a sleeping dragon device and interfer[ing] with work." Am. Compl. ¶¶ 17-19.

MVP concludes in Count Two of its complaint that "Defendants … have agreed and combined to accomplish by concerted action an unlawful purpose, "formed a plan and agreement to enter the right of way", and "formed a plan and agreement to attach Wagner to equipment on the right of way … in order to interfere with work." Am. Compl. at ¶¶ 29-31. The rest of Count

Two of the Amended Complaint declares various activities to have been undertaken "to carry out the plan," such as "gather[ing] in the Jefferson National Forest," "surround[ing] equipment," "arrang[ing] for Wagner to have supplies" and a sign saying "Land Back," and posting about Wagner on social media along with messages describing their opinion of Wagner's activities. *Id*. at ¶¶ 32-38.

No matter how many times the word "plan" appears in Count Two of the Amended Complaint (five), repetition of a legal conclusion cannot compensate for the absence of facts supporting it. Virginia common law conspiracy claims require the plaintiff to allege a "*preconceived* plan" and a "unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (emphasis added). To be "preconceived," an alleged *plan* must predate the challenged *conduct*, but here MVP offers nothing more than simultaneous parallel conduct, or collaboration at best. No mention is made of who particularly agreed to the "plan to attach Wagner to equipment[,]" when or how this "plan" was devised, by what means the unspecified co-conspirators agreed to it, or any other details that might support a plausible inference that Defendants were co-conspirators who agreed to this "plan" rather than people holding signs and posting on social media at a protest at which one Defendant chose to lock down to a piece of construction equipment.[2] Nor do any factual allegations show that

---

[2] MVP's suggestion that pipeline opponents held signs and posted First Amendment-protected messages on "social media" does not assist it in meeting the stringent standard for pleading conspiracy in Virginia. *See Bumgarner v. Fischer*, 101 Va. Cir. 65, 67 (Richmond 2019) ("the Court finds that utilizing online services available to the general public to create websites and promote news articles does not satisfy the necessary requirement of concerted action or attempted concerted action to allege a claim of statutory conspiracy."); *Marfork Coal Co v. Smith*, 2011 U.S. Dist. LEXIS 29598, *31 (Mar. 17, 2011, S.D. W. Va.) (internal quotations omitted) ("Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment.").

Defendants intended Wagner to engage in a lockdown; no particularized allegation indicates any other co-defendant wished to do more than protest at the construction site, perhaps holding a "Land Back" sign or discussing the events on social media.

Taken in the light most favorable to MVP, these allegations and the assertion that "Wagner could not have carried out the attachment without assistance from the other unlawful protestors," Amend. Compl. at ¶ 38, at most could amount to accusations that Defendants aided and abetted Wagner in the alleged lock-down. These accusations might be significant in a criminal proceeding, but are insufficient to establish liability in this civil conspiracy complaint. Unlike aiding and abetting, conspiracy requires allegations of a *prior* agreement. *Zuniga v. Commonwealth*, 7 Va. App. 523, 528 (1988) (quoting *Falden v. Commonwealth*, 167 Va. 542, 544 (1937)) ("A defendant may wittingly aid a criminal act and be liable as an aider and abettor, but not be liable for conspiracy, which requires knowledge of and voluntary participation in an *agreement* to do an illegal act."). The alleged conduct of bringing a sign, going to the work site together, posting on social media, sharing "supplies" with each other, or otherwise being in the same place at the same time and interacting with each other while there does not evince any kind of agreement between the parties.

The allegations here are similarly deficient as those in *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, *12, 2021 U.S. Dist. LEXIS 163753, (Aug. 30, 2021, W.D. Va.). That plaintiff, like MVP, "fail[ed] to allege with any specificity" any other "persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." *Id.* at 32 (quoting *A Society Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011)). Allegations that Defendants were all present at a

10

protest with signs, supplies (perhaps snacks), and shared political opposition to a pipeline, with one Defendant engaging in wholly distinct conduct – the lockdown – does not indicate that Defendants made and agreed to a plan that such a lockdown would occur.

### c. Counts Two and Three fail to particularize any alleged damages or injury resulting from the purported conspiracy.

MVP also fails to particularize its claims of damage or injury resulting from the purported conspiracy. In paragraphs 43, and 48, MVP makes the sweeping assertion that it ". . . has sustained damages, costs, expenses, and attorney fees" as a result of the conspiracies. MVP's failure to plead with specificity the extent to which the protest on October 16, 2023, actually damaged and "irreparably" harmed the company is fatal to its conspiracy claims under Virginia law.

Crucially, MVP does not plead that Defendants actually delayed the pipeline project. MVP pleads Defendants *planned* and intended to stop work there. (Am. Compl. ¶¶ 30-33; 38-39.) Absent from the Amended Complaint are any *specific* allegations concerning how long Defendant Wagner was attached to equipment on October 16, 2023 (Am. Compl. ¶¶ 19, 34); what equipment Defendant Wagner was attached to; whether and to what extent the equipment was operational; whether and to what extent the equipment was necessary to MVP's operations; how long work was "blocked" by other Defendants (Am. Compl. ¶¶ 18, 21); what work was "blocked" by Defendants (Am. Compl. ¶ 18); and, generally, the extent to which MVP sustained actual damages and "irreparable" harm as a proximate result of this single incident in the course of a pipeline construction project delayed for years by perfectly appropriate administrative agency investigations and work stoppage orders as well as by federal court rulings. *See*, *e.g.*, *Sierra Club v. WV DEP*, 64 F.4th 487 (4th Cir. 2023).

Unlike the crime of conspiracy, which is complete upon formation of the conspiratorial

11

agreement, civil conspiracy requires actual execution of that plan and tangible, resulting damage to the plaintiff. *Almy v. Grisham*, 273 Va. 68, 81 (2007) (sustaining demurrer to civil conspiracy claim and observing, "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means."); *accord Gelber v. Glock*, 293 Va. 497, 533-34 (2017) ("No cause of action exists without the resulting injury, and the damage produced must arise as the effective result of the conspiracy."); *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 215 (2014) ("[A]ctions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious").

Virginia's civil conspiracy statute authorizes private suits for violations of Virginia's criminal conspiracy statute by "any person who shall be injured in his reputation, trade, business or profession by reason of" the conspiracy. Va. Code § 18.2-500 (citing Va. Code § 18.2-499). MVP's bald assertion that it "has sustained damages, costs, expenses, and attorneys fees" (Am. Compl. ¶ 48) is the epitome of a conclusory allegation.

Applying these Virginia conspiracy principles and federal pleading standards, the Court should conclude Counts Two and Three fail to state cognizable claims. Absent from the Amended complaint are any specific allegations concerning damages MVP supposedly sustained as a direct consequence of Defendants' alleged act of "block[ing] work" for an unspecified period of time on a single occasion. Because actual, tangible injury is an essential element of civil conspiracy, Counts Two and Three should be dismissed for factual insufficiency.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion to Dismiss and dismiss the Complaint against them with prejudice.

PHILIP ATETO, BARKHA BHANDARI, JOEL DAVIS, KIDUS GIRMA, KLEA HAZIZAJ, DEVORA KLIONSKY, CHRISTIAN SHUSHOK SLOAN TOUCHET, ASHLEY STECHER WAGNER, AND BRYNN WEST

By: /s/ Paul G. Beers
 Of Counsel

Paul G. Beers (VSB # 26725)
Glenn, Feldmann, Darby & Goodlatte
111 Franklin Road, S.E., Suite 200
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone: (540) 224-8000
Facsimile: (540) 224-8050
Email: pbeers@glennfeldmann.com


Kira A. Kelley, *Pro Hac Vice*
MN Bar: 402932
Climate Defense Project
P.O. Box 7040
Minneapolis, MN 55407
Email: kira@climatedefenseproject.org
Telephone: (802) 683-4086

Counsel for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that on April 3, 2024, I electronically filed the foregoing Memorandum in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                                               /s/ Paul G. Beers  
                                                                 Paul G. Beers