IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILIP ATETO, et al., )<br>)<br>Defendants. ) | Case No. 7:23cv00809 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT

Plaintiff Mountain Valley Pipeline, LLC ("MVP"), by counsel, for its response to the motion to dismiss filed by defendants Philip Ateto, Barkha Bhandari, Joel Davis, Kidus Girma, Klea Hazizaj, Devora Klionsky, Christian Shushok, Sloan Touchet, Brynn Cassidy West, and Ashley Stecher Wagner, Dkt. Nos. 32, 33, states as follows:

I.  INTRODUCTION

This case involves an interstate pipeline project approved by Congress. The project crosses the Jefferson National Forest in accordance with an easement and closure order from federal agencies. Although MVP has the right to construct its pipeline, the defendants are intent on blocking the project no matter what. To this end, defendants unlawfully entered MVP's right of way in the National Forest and surrounded and stopped equipment so that Wagner could attach herself to the equipment with a sleeping dragon device.

In its original complaint, MVP named various unlawful protesters involved. Dkt. No. 1. In its amended complaint, MVP has added Ashley Stecher Wagner, the unlawful protester who attached herself to the equipment. Dkt. No. 28 ¶¶ 17, 19. MVP also provided additional facts to support its claims for conspiracy. *Id*. ¶¶ 30-38.

In response, defendants challenge jurisdiction. According to defendants, the Court has no jurisdiction to enforce the easement or the closure order because they involve no federal question. Dkt. No. 33 at 1-4.

Defendants are wrong for two reasons. First, a suit for violation of a federal easement and a federal closure order is a federal cause of action. MVP's claim arises under federal law, and it is governed by federal law. Therefore, the Court has federal-question jurisdiction.

Second, even if a suit for violation of a federal easement were classified as a state law claim, the Court would have jurisdiction under the *Gunn-Grable* framework. This case involves how the federal easement and federal closure order should be interpreted and enforced. These are substantial federal questions that the Court is authorized—and required—to hear.

Defendants' challenges to the merits of MVP's claims have no support in fact or in law. It is universally recognized that holders of easements have the right to enforce their agreements. Holders of easements may not own the land, but they have the right to use it. And courts will prevent others from wrongfully interfering with that right. MVP has therefore stated a claim for interference with its easements.

2

MVP has likewise stated claims for conspiracy. In this case, we have a group of people who planned and coordinated a mass entry on the right of way to stop work. The defendants were all acting in concert for an unlawful purpose, and the actions taken in furtherance of the conspiracy have damaged MVP.

## II.     STANDARD OF REVIEW

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the Court's subject-matter jurisdiction over the complaint. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Caldwell v. UPS, Inc.*, No. 7:15-cv-358-EKD, 2015 WL 6159509, at *3 (W.D. Va. Oct. 20, 2015). A Rule 12(b)(1) motion can either be a facial challenge asserting that the allegations in the complaint are insufficient to establish subject-matter jurisdiction or a factual challenge asserting that the jurisdictional allegations are not true. *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016); *Rivers v. U.S.*, No. 6:18-cv-61, 2020 WL 5526500, at *5 (Aug. 18, 2020), *R&R adopted*, 2020 WL 5790409 (W.D. Va. Sept. 28, 2020). In this case, defendants assert a facial challenge. Dkt. No. 33 at 1-4. In resolving this challenge, the Court must accept the facts alleged in the amended complaint as true, and the motion to dismiss must be denied if the amended complaint alleges sufficient facts for subject-matter jurisdiction. *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009); *Rivers,* 2020 WL 5526500, at *5.

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges whether Counts One, Two and Three set out a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*,

3

556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To survive the motion, the counts "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quotation marks omitted). A claim is facially plausible when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a Rule 12(b)(6) motion, courts accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor, and then determine whether they plausibly give rise to an entitlement to relief under the governing law. *Rivers,* 2020 WL 5526500, at *5.

III. ARGUMENT

A. THE COURT HAS SUBJECT-MATTER JURISDICTION

Under 28 U.S.C. § 1331, the Court has jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." Courts have recognized different categories of cases as arising under federal law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 383 (2016). First, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). As stated long ago in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916), "[a] suit arises under the law that creates the cause of action."

Second, even where state law creates the plaintiff's cause of action, the case arises under federal laws where the "right to relief under state law requires resolution of a

4

substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983). This second category of federal jurisdiction is based upon "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

1. MVP Has Federal Claims

"[T]here is no serious debate that a federally created claim for relief is generally a 'sufficient condition for federal-question jurisdiction.'" *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 377 (2012) (quoting *Grable*, 545 U.S. at 317). In this case, MVP's claims are federally created.

The property where the incident occurred is owned by the United States and part of the Jefferson National Forest. Dkt. No. 28 ¶ 9. The right of way that MVP holds was granted to it by the Bureau of Land Management. *Id.* ¶ 12. To allow construction to proceed safely, the United States Forest Service issued an order closing the right of way to others. *Id.* ¶ 13.

The Property Clause of the Constitution states that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const., Art IV, § 3, cl. 2. Under this provision, "Congress exercises the powers of both a proprietor and of a legislature." *Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976). The power of Congress over public lands is "'complete'" and "'without limitations.'" *Id.* at 539-40 (quoting *U.S. v. San Francisco*, 310 U.S. 16, 29, 30 (1950)).

5

"Federal law governs a claim of easement over lands owned by the United States." *McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008). While easements are also an integral part of state law, "the rules regarding easements over lands of the United States are substantially different from the rules applicable to private property." *Montana Mine Land Holdings, LLC v. U.S. Dep't of Agric.*, No. 17-cv-65, 2018 WL 1640866, *2 (D. Mont. Apr. 5, 2018). One has only to look at the provisions of the grant to see that. Dkt. Nos. 28-4, 28-5. *See also Samuel C. Johnson 1988 Tr. v. Bayfield Cty.*, 649 F.3d 799, 801 (7th Cir. 2011) ("[B]ecause the property was once owned by the federal government and the plaintiffs ultimately base their suit on the terms of the original federal grants, the suit may be said to arise under federal law as well."); *Beres v. U.S.*, 104 Fed. Cl. 408, 443 (2012) ("'[T]he construction of grants by the United States is a federal not a state question,' and 'involves the consideration of state questions only in so far as it may be determined as a matter of federal law that the United States has impliedly adopted and assented to a state rule of construction as applicable to its conveyances.'") (quoting *U.S. v. Oregon*, 295 U.S. 1, 27-28 (1935)).

Under the Enclave Clause, the United States may acquire exclusive jurisdiction of land in a state with the consent of the state. U.S. Const., Art. I, § 8, cl. 17; *Kleppe*, 426 U.S. at 542. The United States and a state may also agree to concurrent jurisdiction over the land. *Id.*

In national forests, the United States and the states have agreed to concurrent jurisdiction. *U.S. v. Raffield*, 82 F.3d 611, 612-13 (4th Cir. 1996); *see U.S. v. Gabrion*, 517 F.3d 839, 855 (6th Cir. 2008). In approving the acquisition of lands for a

6

national forest, Virginia reserved concurrent jurisdiction. 1901 (Ex. Sess.) Va. Acts, Ch. 229, page 247, copy attached as Exhibit 1. In accepting lands for a national forest, Congress agreed to concurrent jurisdiction. 16 U.S.C. § 480. The United States retained authority to regulate activities in national forests. 16 U.S.C. § 551. The United States also retained the authority to grant easements. 30 U.S.C. § 185; *see Kleppe*, 426 U.S. at 542-43 (holding that Congress has the power under the Property Clause to enact legislation for federal lands).

Congress has expressly approved the right of way for MVP's project. Pub. L. No. 118-5, 137 Stat. 10 (2023). Congress found that completion of the project is required in the national interest, and it ratified and approved all authorizations for the project to proceed. *Id.*

Because MVP's claims in this case are based upon a federal grant, a federal closure order, and a right of way approved by Congress, they arise under federal law.

### 2. *The Case Presents Substantial Federal Questions*

In their brief, defendants do not address the federal claims asserted by MVP. Rather, they assume that all the claims asserted by MVP arise under state law and that these claims do not present a substantial federal question under the *Gunn-Grable* framework. Dkt. No. 33 at 2. Because MVP's claims for interference with its right of way and violation of the closure order arise under federal law, the Court does not need to reach the *Gunn-Grable* analysis. Under that analysis, however, the Court would also have jurisdiction.

7

In *Grable*, the Supreme Court held that a state-law claim would present a federal question where it raised "a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. In *Gunn*, the Court said "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 568 U.S. at 258.

In this case, the federal issues involve the interpretation and enforcement of the right of way granted by the United States to MVP and the interpretation and enforcement of the closure order. The right of way and closure order are "necessarily raised." They form the basis for MVP's case. *See VA Timberline, LLC v. Appalachian Power Co.*, No. 4:06-cv-26, 2006 WL 1993557, at *1 (W.D. Va. July 13, 2006) (holding that the court had federal-question jurisdiction where construction of a federal license incorporated into the plaintiff's easement agreement was necessarily raised); *Tri-Dam v. Frazier*, No. 1:20-cv-408, 2021 WL 3857649, at *8 (E.D. Cal. Aug. 30, 2021) ("[A]s resolution of the public nuisance claim necessarily turns on interpretation of the Shoreline Management Plan, a federal instrument, this Court has jurisdiction over the claim."), *aff'd*, No. 22-15246, 2023 WL 3193592 (9th Cir. May 2, 2023); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006) (holding that federal-question jurisdiction existed where the district court was required to interpret a federal land-grant statute and right-of-way easement).

While defendants have not filed an answer, their actions show that they actually dispute MVP's rights. Defendants have engaged in a direct action campaign to deny MVP the benefit of the right of way and closure order. Dkt. No. 28 ¶¶ 14-16. In their memorandum, defendants do not concede the enforceability of MVP's easement, nor do they concede MVP's right to use the easement free from interference by defendants. See Dkt. No. 33 at 1-4.

These questions are substantial and of "importance . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. Indeed, Congress has expressly declared completion of the project to be in the national interest. Pub. L. No. 118-5, 137 Stat. 10 (2023).

Resolution of MVP's claims in federal court will not disrupt the federal-state balance of judicial responsibilities. The enforcement powers of states and the United States are concurrent in national forests. The Court's exercise of jurisdiction will not infringe on the authority of the state. The Court will be interpreting and enforcing a federal easement and closure order on federal land for a project that Congress has directed be completed.

### 3.  *Pressl* Is Distinguishable

Defendants rely on *Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016), Dkt. No. 33 at 3, but that case involved a private easement. In *Pressl*, the plaintiffs brought suit in state court for a declaratory judgment that building a dock on their property was not inconsistent with an easement that their predecessors—as private parties—had granted to defendant. 842 F.3d at 301. While plaintiffs alleged federal

9

regulations applied, they also alleged that the terms of the easement itself did not prohibit construction of the dock. *Id*. at 303-05. Because the case could be resolved without enforcement of a federal instrument or an interpretation of a federal law, a federal question was not necessarily raised. *Id*.

In contrast to the plaintiffs in *Pressl*, MVP is not asking the court to construe an easement granted by a private party. Rather, MVP seeks construction and enforcement of a federal instrument and a federal order, so federal questions are necessarily raised. *See Samuel C. Johnson 1988 Tr.*, 649 F.3d at 801 (holding suit based on federal grant arises under federal law); *Nicodemus*, 440 F.3d at 1234-36 (holding suit requiring interpretation of a federal land-grant statute and right-of-way easement involves substantial federal issue).

Similarly, in *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 557-59 (4th Cir. 1999), the pipeline company brought an action in federal court to enforce an easement granted by the defendant, a private party. The court held that the case could be resolved without reference to federal regulations and, therefore, did not necessarily raise a federal question. Also, in *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 585 (6th Cir. 2013), the court held it did not have jurisdiction over a claim for interference with a private easement agreement even though federal regulations governed the company's operations. In each of these cases, the pipeline company sought to enforce a private easement—not a federal one. Conversely, MVP's claims cannot be resolved without reference to the federal instrument and order upon which the claims depend.

10

### 4. The Court Has Supplemental Jurisdiction Over Count Three

Court One is for interference with the federal easement and violation of the federal closure order. Count Two is for common law conspiracy. Count Three is for violation of Virginia Code § 18.2-499A.

Of these claims, only Count Three requires the application of state law. For the reasons discussed above, however, the Court would have jurisdiction over Count Three under the *Gunn-Grable* analysis. That analysis aside, the Court would also have supplemental jurisdiction over Count Three.

Under 28 U.S.C. § 1367(a), if a district court has original jurisdiction over some claims, it may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." The claim under Virginia's statute for conspiracy is part of the same case or controversy as the federal claims.

While the amended complaint does not specifically invoke supplemental jurisdiction for Count Three, it was not required to. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 674-75 (6th Cir. 2005). The amended complaint alleges federal-question jurisdiction, and Count Three is supplemental to the federal claims.

### B. THE AMENDED COMPLAINT STATES CAUSES OF ACTION

#### 1. Count One States a Claim for Interference with the Federal Easement

Count One alleges a claim for interference with the federal easement and

11

violation of the federal closure order.  Dkt. No. 28 ¶¶ 25-27.  In their memorandum, defendants contend that MVP does not have a private right of action to enforce its easement granted by the federal government.  Dkt. No. 33 at 5.  In support of their contention, plaintiffs cite *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), which sets forth the rules to determine whether it there is a private right of action to enforce a statute.  This case does not apply, however, because MVP does not merely seek to enforce a federal statute, but to enforce a property right created by the federal government.  See Dkt. No. 33 at 3 (admitting the easement "is not a federal law" but a "property agreement").  Specifically, the federal government granted MVP "a right to construct, operate, maintain, and terminate a 42-inch, welded steel, underground natural gas pipeline and related facilities . . . on Federal land."  Dkt. No. 28-3 at 2 of 145.  And it entered a closure order to prevent others from interfering with that right.

It is universally recognized that easements are real-property rights entitled to protection.  *Snead v. C & S Props. Holding Co.*, 692 S.E.2d 212, 215-16 (Va. 2010); *Pizzarelle v. Dempsey*, 526 S.E.2d 260, 266 (Va. 2000); *Columbia Gas Transmission, LLC v. Grove Ave. Developers, Inc.*, 357 F. Supp. 3d 506, 528 (E.D. Va. 2019); *Restatement* (Third) *of Property (Servitudes)* § 8.1 (2000) ("A person who holds the benefit of a servitude under any provision of this Restatement has a legal right to enforce the servitude.  Ownership of land intended to benefit from enforcement of the servitude is not a prerequisite to enforcement."); Michael Allen Wolf, *Powell on Real Property* §

34.17 (2005) (stating an easement holder is entitled to maintain an action for the infringement of his easement whether or not pecuniary loss has been suffered).

Defendants also contend, incorrectly, that the easement may not be enforced against them because they are not parties to the easement. Dkt. No. 33 at 5. An easement holder, however "is entitled to protection from acts of third parties that interfere with enjoyment of the easement. Such protection is available against third parties to the same extent that it is available against the servient estate owner." Jon W. Bruce, et al., *The Law of Easements & Licenses in Land* § 8:33 (March 2024 Update); see *Williams v. Esling*, 4 Pa. 486, 488 (1846) ("[T]he grant of a way is exclusive, at least as to strangers; and . . . every intrusion into the enjoyment of an exclusive right subjects the wrongful participant to an action by the owner of it."); *Restatement (First) of Property* § 450 (1944) ("An easement is an interest in land in the possession of another which . . . entitles [the easement holder] to protection as against third persons from interference in such use or enjoyment."). Defendants do no cite any case holding otherwise, and MVP is aware of none.

2. *Counts Two and Three State Claims for Conspiracy*

Defendants contend that Counts Two and Three do not allege conspiracy with particularity and, therefore, fail to state a claim. Dkt. No. 33 at 6-12. Defendants rely on a line of cases that liken a claim for conspiracy to a claim for fraud and find that claims for conspiracy must be plead with particularity. *Id*. at 6-7. Defendants omit, however, the cases indicating that the requirement to plead conspiracy with particularity

13

is limited to instances where fraud is the underlying tort. *Terry v. SunTrust Banks, Inc.*, 493 F. App'x. 345, 358 (4th Cir. 2012); *Evolved Karomac Vision Corp. v. Majority Holdings Int'l*, No. 1:19-cv-269, 2019 WL 12405934, at *1 (E.D. Va. June 10, 2019); *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 825–26 (E.D. Va. 2013); *Alliance Tech. Group, LLC v. Achieve 1, LLC*, No. 3:12-cv-701, 2013 WL 143500, at *9 & n.7 (E.D. Va. Jan. 11, 2013). Under these cases, MVP's conspiracy claims are not based on fraud so the heighted pleading standard of Rule 9 does not apply.

The standard for pleading conspiracy is set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In that case, the Supreme Court held that in order to plead conspiracy, the plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556. The Court cautioned that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*. Notably, the Court stated "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A heightened pleading standard simply does not exist for conspiracy claims that are not based on fraud.

In any event—and regardless of the pleading standard to be applied—MVP has alleged specific facts showing that defendants engaged in a conspiracy to harm MVP. These facts include the following:

- Defendants and other unlawful protesters formed a plan and agreement to enter MVP's right of way in the Jefferson

14

National Forest in order to interfere with its work on the project, Dkt. No. 28 ¶ 30;

- Defendants and other unlawful protesters further formed a plan and agreement to attach Wagner to equipment on the right of way in order to interfere with work, *id.* ¶ 31;

- Defendants and other unlawful protesters carried out the plan by constructing and transporting a sleeping dragon device for Wagner to use, *id.* ¶ 32;

- Defendants and other unlawful protesters gathered in the National Forest and entered MVP's right of way to carry out the plan, *id.* ¶ 33;

- Defendants and other unlawful protesters surrounded equipment to stop its operation so Wagner could attach herself to the equipment, *id.* ¶ 34;

- Defendants and other unlawful protesters arranged for Wagner to have supplies for the attachment, *id.* ¶ 35;

- Defendants and other unlawful protesters arranged for Wagner to have a sign to promote the unlawful action, *id.* ¶ 36;

- Defendants and other unlawful protesters took pictures of Wagner and posted them on social media with messages praising the unlawful actions, *id.* ¶ 37;

15

- Wagner could not have carried out the attachment without assistance from the other unlawful protesters, *id*. ¶ 38;

- Wagner and the other defendants worked together to carry out their unlawful plan and agreement, *id*. ¶ 38;

- The unlawful action by defendants interfered with work on the project, *id* ¶ 19;

- Defendants blocked work until law enforcement arrived and removed them, *id*. ¶ 21;

- As a direct and proximate result, MVP has sustained damages, costs, and expense, *id*. ¶¶ 43, 48.

In their memorandum, defendants argue that MVP has not alleged certain specifics of defendants' unlawful plan, such as when or how it was devised and by what means defendants agreed to it. Dkt. No. 33 at 9-10. There are two answers to this argument. First, under *Twombly*, MVP is required only to plead "enough factual matter (taken as true) to suggest that an agreement was made" or "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." 550 U.S. 556. Second, an express agreement is not required for a claim for conspiracy. *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 45 F.3d 428, 1994 WL 717598, *2, 5 (4th Cir. 1994); *Keil v. Seth Corp.*, No. 3:21-cv-153, 2021 WL 5088242, at *16 (E.D. Va. Nov. 2, 2021). A claim of conspiracy will survive a Rule 12(b)(6) motion when the defendants' conduct and the inferences to be drawn from such conduct indicate a "tacit" agreement. *Id.*; *see also Am. Airlines, Inc. v. Shahi World & Travels, LLC*, No. 1:20-cv-17, 2023 WL

16

3952332, at *20 (E.D. Va. June 12, 2023) (recognizing that a conspiracy can be based on a tacit understanding); *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 906 (E.D. Va. 2000) ("[A] conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a 'tacit understanding' to accomplish the object of the alleged conspiracy.").

Here, MVP alleges that defendants constructed and transported a sleeping dragon device to the National Forest, entered MVP's right of way, and surrounded equipment in order to stop its operation so that Wagner could attach herself to the equipment.  Dkt. No. 28 ¶¶ 17-21, 32-35.  From these allegations of concerted action, it is clear that defendants carried out a preconceived plan to interfere with MVP's easements and work.  No inference to the contrary can reasonably be drawn.

Defendants do not cite any cases supporting their contention that allegations like these fail to state a claim for conspiracy.  The cases cited by defendants simply require allegations of concerted unlawful activity from which a conspiracy can be inferred.  *See Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-42, 2021 WL 3856459, at *12 (W.D. Va. Aug. 30, 2021) (granting summary judgment where plaintiff could show no examples of concerted unlawful activity); *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483, 499-500 (E.D. Va. 2003) (holding that plaintiff failed to state a claim for conspiracy because it did not allege concerted action or unlawful means); *Zuniga v. Commonwealth*, 375 S.E.2d 381, 384 (Va. Ct. App. 1988) (holding conviction for conspiracy requires evidence upon which a reasonable inference

17

can be drawn that defendant was aware of the unlawful plan and voluntarily participated in it).

Finally, defendants contend that MVP's allegations are insufficient to show that MVP was "actually damaged" by the conspiracy. Dkt. No. 33 at 11. Specifically, defendants claim that MVP has not shown "actual execution" of the plan and "tangible, resulting damage" to MVP. *Id*. at 12. This is also not correct. MVP alleges that defendants and others willfully and unlawfully entered the right of way and interfered with the work by blocking equipment and obstructing workers until law enforcement arrived and removed defendants, and that, as a result of such conduct, MVP has sustained damages, costs, expenses and attorney fees. Dkt. No. 28 ¶¶ 17-23, 43, 48.

Again, defendants do not cite any cases supporting their contention that these allegations fail to state a claim for damages from conspiracy. The cases cited by defendants merely state that the plaintiff is required to allege that the actions taken in further of the conspiracy caused it to incur damages. *See Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007) ("The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy."); *Gelber v. Glock*, 800 S.E.2d 800, 821 (Va. 2017) (affirming motion to strike claim for conspiracy where plaintiffs did not prove any damages); *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) ("[A]ctions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious."). Because MVP has alleged that the concerted actions of

18

defendants interfered with MVP's work on the project and caused damages, MVP has stated a claim for conspiracy.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) should be denied.

Respectfully submitted,

MOUNTAIN VALLEY PIPELINE, LLC

By Counsel

Wade W. Massie
 VSB No. 16616
Seth M. Land
 VSB No. 75101
PENN, STUART & ESKRIDGE
P. O. Box 2288
Abingdon, Virginia  24212
Telephone:  276-628-5151
Facsimile:  276-628-5621
wmassie@pennstuart.com
sland@pennstuart.com

By  */s/ Wade W. Massie*
        Wade W. Massie

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2024, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

  */s/ Wade W. Massie*
Wade W. Massie

19