IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:23-cv-00809 |
| PHILIP ATETO, et al., | ) |
| Defendants. | ) |

**<u>DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS</u>**

NOW COME Defendants, Philip Ateto, Barkha Bhandari, Joel Davis, Kidus Girma, Klea Hazizaj, Devora Klionsky, Christian Shushok, Sloan Touchet, Ashley Wagner, and Brynn Cassidy West, by and through the undersigned attorney, and respectfully submit the following reply to Plaintiff Mountain Valley Pipeline's Response to Defendants' Motion to Dismiss Amended Complaint.

MVP's state law claim of easement interference is not a federal action simply because the federal government conveyed the easement to Plaintiff through a prior legal proceeding, nor do the existence of federal easements and permits create substantial federal issues pursuant to the *Gunn-Grable* framework.

The Amended Complaint also fails to state a claim upon which relief could be granted for easement interference and for conspiracy. Plaintiff cites no case where an easement holder has a cause of action for easement interference against anyone except a servient landowner. Mere repetition of the words "plan" and "damages" in the conspiracy claims amount to conclusory recitations of elements, which is wholly

1

insufficient under any standard of pleading–let alone the particularized standard that a conspiracy claim requires.

## I. LACK OF SUBJECT MATTER JURISDICTION

Plaintiff's claims arise exclusively under state easement and conspiracy laws: neither the right of way, temporary use permit, nor the closure order create any federal cause of action. Nor do these state-law claims of property interference and conspiracy turn on or otherwise require resolution of any substantial question of federal law. A federal controversy "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal" or presumably by any responsive pleading to a motion to dismiss. *Gully*, 299 U.S. at 113, 57 S.Ct. at 98. Nothing in the Complaint indicates that MVP intended to bring federal law claims, aside from the insistent references to a federal closure order that MVP has no rights under or authority to enforce.

   A. *The Federal Closure Order Provides No Remedy for the Plaintiff and Cannot be Superfluously Inserted as a Pretext for Federal Subject Matter Jurisdiction.*

Plaintiff continues to cite the federal closure order as a basis for asserting "arising under" jurisdiction. Dkt. 37 at 1-2, 7-9, 11-12. But, as Defendants have previously noted, a federal closure order does not provide a private cause of action. Dkt. 33 at 2, n1 and 6. As such, it cannot be the basis for federal question jurisdiction. *Franchise Tax Bd. of State of Cal v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27, 103 S.Ct. 2841, 2855 (1983). Like in *Franchise*, where federal law was invoked but provided no basis for relief, Plaintiff's reference to the closure order is irrelevant for purposes of determining jurisdiction. *Id*. at 4 (finding subject matter jurisdiction absent when the federal law "does not

provide anyone other than participants, beneficiaries, or fiduciaries of an ERISA-covered plan with an express cause of action for a declaratory judgment on the issues of this case.").

MVP fails to explain how it has any rights (let alone causes of action) under the closure order. Accordingly, Defendants focus their analysis hereinafter on the Right of Way Grant and the Temporary Use Permit, and ask this Court to disregard references to the closure order in Plaintiff's appeals for federal jurisdiction.

B. The Claims of Interference With the Right of Way Grant and Temporary Use Permit do not Arise Under Federal Law.

A right of way is not a federal law by virtue of the federal government being the servient landowner, because a right of way is not a law in the first instance. Nor is a Temporary Use Permit a "federal law," but rather a right emanating from a prior proceeding that was governed by federal law. MVP concedes this. Dkt. No. 37 at 12 (citing Dkt. No. 33 at 3). MVP's easement and permit are the *result* of legal proceedings that involved federal laws, but these federal laws are not automatically implicated by its present Complaint seeking to enforce those rights under state property law.

MVP cites *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 132 S.Ct. 740 (2012) for the principle that a federally created claim for relief satisfies federal question jurisdiction. Dkt. 37 at 5. This holding is irrelevant to this case; the Right of Way and Temporary Use Permit are rights, not claims for relief. *Mims* found federal question jurisdiction in a claim brought explicitly *under a federal law*, and focused instead on the question of whether a permissive grant of state jurisdiction could divest a court of federal question jurisdiction. *Mims*, 565 U.S. at 380, 132 S.Ct. at 749. Here, MVP's causes of action are brought exclusively under state statute and common law.

The Supreme Court has recognized that "a suit to enforce a right which takes its origin in the laws of the United States is not necessarily one arising under the Constitution or laws of the United States, within the meaning of the jurisdiction clauses[.]" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 814 n.12, 106 S.Ct. 3229, 3235 n.12 (1986) (*quoting Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 507, 20 S.Ct. 726, 727 (1990)). As century-old precedent makes clear:

> The requirement of an actual dispute about federal law [is] "especially" important in "suit[s] involving rights to land acquired under a law of the United States," because otherwise "every suit to establish title to land in the central and western states would so arise [under federal law], as all titles in those States are traceable back to those laws."

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mgf*, 545 U.S. 308, 315 n. 3 125 S.Ct. 2363, 2368 n.3 (2005) (*quoting Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704 (1912)); *see also Gully v. First Nat. Bank*, 299 U.S. 109, 115, 57 S.Ct. 96, 99 (1936) (finding no federal question jurisdiction in state law contract dispute when debt arose from federal law authorizing taxes and noting that "[n]ot every question of federal law emerging in a suit is proof that a federal law is the basis of the suit").

Nor, as *Gully* notes, do claims involving federally incorporated entities invoke federal question jurisdiction when jurisdiction is otherwise absent, unless the US government also holds more than half of the stock of the corporation. *Id.*, 299 U.S. at 113, 57 S.Ct. at 98.

MVP identifies several cases where courts found federal question jurisdiction over disputes that involve federal land. But neither *McFarland v. Kempthorne*, 545 F.3d 1106 (9th Cir. 2008) nor *Montana Mine Land Holdings, LLC v. U.S. Dept. of Agric.*, No. 17-cv-65, 2018 WL 1640866 (D. Mont. Apr. 5, 2018) lend credence to MVP's position here. Neither of these cases actually discussed federal question jurisdiction, and this

4

silence makes rational sense given that in both cases, federal law (not federal land) provided the basis for at least one claim for relief.

The *McFarland* case sought to quiet title to an easement on federal land on the basis that the Homestead Act implicitly created that easement, and alternatively that by denying the plaintiff's land use permit the defendant violated the Administrative Procedure Act. *McFarland*, 545 F.3d at 1110. The *McFarland* court had federal question jurisdiction because the "claims of easement," ie claims that an easement was created, arose under the Homestead Act and the Administrative Procedure Act.

This logic comports with the rationale underlying *Montana Mine Land Holdings* case, another quiet title action against the United States that MVP relies on to assert federal question jurisdiction. Here, the petitioner claimed that the General Mining Act of 1872 created an express easement, and that the federal Forest Service lacked the authority to require petitioner to apply for a special use permit. The action was a dispute over the interpretation of federal law and federal agency authority, and plainly arose under federal law.

MVP quotes these cases for the proposition that federal law governs a "claim of easement" and "the rules regarding easements over lands of the United States are substantially different from the rules applicable to private property." Dkt. 37 at 6 (*quoting Montana Mine Land Holdings, LLC*, 2018 WL 1640866 at 2). But to the contrary, the Supreme Court has more recently held that courts reviewing easement claims on federal land should apply "the same general principles" as they would when evaluating property rights disputes between private or state landowners. *United States Forest Service v. Cowpasture River Preservation Association*, 590 U.S. ___, 140 S.Ct. 1837, 1844-45 (2020).

The Plaintiffs cite another quiet title action in which the plaintiff disputed the terms of the original land grant, thus necessarily placing the land grant process at issue. *Samuel C. Johnson 1988 Tr. v. Bayfield Cty.*, 649 F.3d 799 (7th Cir. 2011). In *Beres v. U.S.*, 104 Fed. Cl. 408, 443 (2012), the causes of action were alleged violations of federal law and the federal constitution, rendering the complaint replete with federal questions. Dkt. 37 at 6. These cases necessarily addressed the federal processes by which these grants were created because the Plaintiffs themselves disputed what rights were conveyed pursuant federal law, not whether those rights were subsequently infringed.

Here, Plaintiff is not making a "claim of easement" against the United States contesting the existence or terms of the Right of Way or Land Use Grant. Instead, Plaintiff claims that the easement it already holds has been interfered with by another party.

Lastly, the Enclave Clause in the United States Constitution does not create a ripple effect of federal jurisdiction for state law claims by virtue of lineage to federal Enclave Clause authority. The Enclave Clause, and the powers it vests in the United States government, are far removed and wholly distinct from the issues central to this case. None of the causes of action in the Amended Complaint arise under the Enclave Clause, the Congressional approval for the Right of Way, nor the litany of federal statutes listed in the Reply to the Motion to Dismiss the Amended Complaint, Dkt. 37 at 6-7.

> C. The Complaint fails the *Gunn-Grable* test because alleged interference with a right of way created by the federal government does not necessarily require the Court to resolve a disputed and substantial federal issue.

The closure order is not "necessarily raised" in this matter: it does not even provide MVP with any private rights, let alone a cause of action. Nor do the Right of Way

Grant or Temporary Use Permit present federal issues, they are property rights granted by the federal government and now held by a private entity and purportedly enforced under state law against other private individuals. MVP may seek to pad its response with various citations to federal laws, the U.S. Constitution, regulations, and administrative agencies and orders, but numerosity of references cannot give significance to what could generously be categorized as federal context or background, but not federal issues. As the Supreme Court noted:

> [C]ountless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

*Merrell Dow Pharmaceuticals Inc.* 478 U.S. at 813 n. 11, 106 S.Ct. at 3234 n. 11 (quoting Gully, 299 U.S. at 115, 57 S.Ct. at 98).

The *Gunn-Grable* test is a framework for applying the "well-pleaded complaint" rule in cases such as this where the causes of action are based on state law. "The 'well-pleaded complaint' rule … as a practical matter severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court." *Franchise*, 463 U.S. at 9-10, 103 S.Ct. at 2846. A proper application of the *Gunn-Grable* test and the well-pleaded complaint rule shows that a federal question does not appear on the face of this Complaint because no purported federal issue is necessarily raised.

In *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876 (1950), the Court decided that a state law declaratory judgment contract action did not give rise to federal question jurisdiction–even though a federal action gave rise to the contested

7

contract rights. In *Skelly*, whether the contract was breached depended on whether the Federal Power Commission issued certificates of convenience and necessity to a third party. *Id.*, 339 U.S. at 669, 675-76, 70 S.Ct. at 878, 880-81. Notwithstanding the fact that actions of the Federal Power Commission both initiated the dispute between the two parties and were factually relevant to the state-law claim, see *id.*, 339 U.S. at 669-70, 70 S.Ct. at 878, the Court found no federal question jurisdiction. *Id.*, 339 U.S. at 672-74, 70 S.Ct. at 879-880.

MVP's state law interference with easements claim does not necessarily raise a federal question regardless of whether MVP attempts to preempt what it anticipates Defendants' defenses to be using citations to federal law. "The plaintiff's claim itself must present a federal question, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.* (internal quotations omitted). MVP engages in just such anticipatory arguments. Dkt. 37 at 9 ("While defendants have not filed an answer, their actions show that they actually dispute MVP's rights…"). Defendants' alleged conduct outside of court cannot raise a federal question by implication any more than Defendants' filings can.

The authorities relied upon by MVP with respect to the *Gunn-Grable* framework are also factually distinct from the case at bar. Dkt. 37 at. 8. *See VA Timberline, LLC v. Appalachian Power Co.* No. 4:06-cv-26, 2006 WL 1993557, at *1 (W.D. Va. July 13, 2006) (finding federal question jurisdiction in declaratory judgment action regarding "the terms and conditions" of a federal easement in a dispute between the easement holder and the owner of a servient property); *Tri-Dam v. Frazier*, No. 1:20-cv-408, 2021 WL 3857649, *5-8 (E.D. Cal. Aug. 30, 2021) (finding federal question jurisdiction when establishment of public nuisance claim required interpretation of FERC license);

8

*Nicodemus v. Union Pac. Corp.*, 440F.3d 1227, 1234-36 (10th Cir. 2006) (finding federal question jurisdiction when the scope of the easement was central to the litigation, plaintiff's claims all depended on whether a party's "use of the right-of-way [ ] exceeded the purpose for which it was granted[,]" and "construction of the federal grant land grant appear[ed] to be the only legal or factual issue contested in the case") (implicit overruling recognized in *Nadel and Gussman, LLC v. Reed Family Ranch, LLC*, 998 F.Supp.2d 1211, 1217 n. 4 (N.D. Okla. 2014) (*quoting Gilmore v. Weatherford*, 694 F.3d 1160, 1175 n. 3 (10th Cir. 2012))).

Just as a state law trespass action does not necessarily call into question the property transfer proceeding that vested exclusionary rights in the plaintiff landowner, federal permitting processes do not create federal questions for subsequent actions seeking to enforce easement rights against third parties. When the federal question is not necessarily raised by the state law claim, but will only arise if other legal arguments fail or if certain legal theories are pursued by the defense, "[t]he most that one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government." *Gully*, 299 US at 117, 57 S.Ct. 96 at 99-100.

## II.  MVP FAILS TO STATE A CAUSE OF ACTION

### A. *Count One Fails to State a Claim for Interference with an Easement to which Defendants are not a Party.*

MVP offers no cases, let alone in this jurisdiction, which recognize a third-party claim of interference with easements. Count One alleges that "defendants violated the rights of MVP under the Right of Way Grant and Temporary Use Permit and Closure Order." Dkt. 28 at 7. While the Right of Way and the Land Use Grant may have granted

9

MVP rights to construct and operate a pipeline on federal land, the conveyance of these rights flowed from the federal government to MVP.

In support of its argument that this easement grants it rights against Defendants, MVP cites a total of four cases. The first three cases are used to support the general (and undisputed) principle that easements are property rights entitled to protection. Dkt. 37 at 12, (citing *Snead v. C & S Props. Holding Co.*, 692 S.E.2d 212, 215-16 (Va. 2010); *Pizzarelle v. Dempsey*, 526 S.E.2d 260, 266 (Va. 2000); and *Columbia Gas Transmission*, LLC v. Grove Ave. Developers, Inc., 357 F. Supp. 3d 506, 528 (E.D. Va. 2019)). All three of these cases exclusively address disputes between easement holders and servient landowners.

The fourth and final case is an antebellum-era opinion from the Supreme Court of Pennsylvania cited for its proposition that the holder of an easement for exclusive use has an action against a third party intruder. Dkt. 37 at 13, citing *Williams v. Esling*, 4 Pa. 486, 488 (1846). MVP does not attempt to use *Williams* to assert that the appropriate remedy against a third party is interference with the easement, as opposed to claims of trespass or nuisance for example. MVP identifies no case law wherein a plaintiff brings claims of easement interference against anyone other than a servient landowner. Virginia law, on the other hand, suggests that the rights in an easement are actionable only against the servient landowner. *See* Dkt. 33 at 5, citing *Ortiz v. Flattery*, 63 Va. Cir. 309, 2003 WL 22785031, *3 (Fairfax Co. Cir. Ct. 2003).

> B. MVP Fails to State a Claim for Conspiracy, Notably having Failed to Allege a Prior Agreement or Damages.

Under controlling pleading standards, a complaint must "state a claim to relief that is plausible on its face," with specific factual allegations that are "more than labels

and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This logic extends to conspiracy claims. A complaint must offer factual support, beyond a mere legal conclusion, to support the existence of an agreement, an overt act, and an unlawful aim (or an unlawful act and a lawful aim).

MVP disputes that statutory and common law conspiracy claims are subject to heightened pleading strictures, despite a litany of precedent suggesting exactly such a standard. To the extent that MVP has offered cases where judges attached heightened pleading requirements to fraud but not to conspiracy, Dkt. 37 at 14, Defendants urge this Court to find Judge Cullen's reported opinion in this Court the most compelling: "like fraud," conspiracy "*also* must be pleaded with particularity." *NetTax, LLC v. Posso Pizza, Inc.*, 2024 U.S. Dist. LEXIS 13384, *30 (Jan. 24, 2024, W.D. Va.) (emphasis added). Regardless, MVP fails its pleading burden under any standard.

A plaintiff satisfies its burden of particularized pleading for a claim of conspiracy only if the complaint states with specificity "the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made.'" *Darton Environmental, Inc. v. Fjuvo Collections, LLC, et al.*, 332 F.Supp.3 1022, 1036 (W.D. Va. 2018) (quoting *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)); *see also Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 U.S. Dist. LEXIS 163753, *32 (Aug. 30, 2021, W.D. Va.).

MVP cites *American Airlines, Inc v. Ahi World & Travels, LLC*, 2023 WL 3952332 (E.D. Va. 2023) for the precept that tacit agreements are sufficient. Dkt. 37, p. 16-17. A tacit agreement nonetheless requires at least some form of meeting of the minds, and does not diminish MVP's burden to plead more than just that the

11

Defendants engaged in the same conduct at the same time. "Mere parallel conduct does not suggest conspiracy." *Twombly*, 550 U.S. at 556-67.

In *American Airlines*, alleged co-conspirators engaged in a multi-step process that involved affirmative, repeated exchanges and revealed that each party knew of and desired the future actions of their co-conspirators. For example some co-conspirators solicited business, which another co-conspirator later approved electronically, and which solicitations and approvals the co-conspirators repeated. Throughout these steps, co-conspirators exchanged money as apparent compensation for tasks performed in furtherance of the conspiracy. *American Airlines, Inc.*, 2023 WL 3952332, at *20. MVP's reliance upon precedent such as *American Airlines*, then, is misplaced. Neither advanced coordination, repetition, nor implicit actions indicating agreement (such as affirmative approval of the business deals), are alleged here.

Far more on point is *Darton Environmental*, where this Court found allegations to be insufficient that "shortly after the agreements were signed and FJUVO representatives inspected the Darton refinery, FJUVO and its agents Chen and the Zhengs conspired together to breach the agreements," and that "Defendants Chen and TG also conspired to use and in fact began to use the Darton technology in TG's refinery in Highland, Indiana." *Darton Environmental, Inc.*, 332 F.Supp.3d at 1036.

Similarly, MVP alleges that Defendants and others "formed a plan and agreement to attach Wagner to equipment on the right of way in order to interfere with work," Dkt. 37 at 15, quoting Dkt. 28 ¶ 30. None of the alleged conduct purporting to indicate that a plan was formed and agreed to appears to have taken place prior to the date of the alleged interference, except for implications that defendants amassed mostly unspecified supplies to bring to the forest. Dkt. 37 at 14-15. Bringing supplies to a group

12

event does not indicate that all persons present at the event have entered into a plan and agreed to a conspiracy that encompasses whatever spontaneous conduct that might have later occurred at that event.

Like the *Darton Environmental* plaintiff, MVP "throw[s] around conclusions of conspiracy without any factual content about 'the specific communications amongst the conspirators, or the manner in which any such communications were made.'" *Darton Environmental*, 332 F.Supp. 3d at 1036. Alleging that Defendants have "agreed and combined" is precisely the type of "formulaic recitation of the elements" and reliance on "labels and conclusion" that are insufficient under *Twombly's* progeny, including *Darton Environmental. Bell Atl. Corp.*, 550 U.S. at 556-57. MVP does not plead allegations that support a conspiracy because it does not offer any facts that indicate an agreement, tacit or otherwise. MVP alleges parallel conduct rather than concerted conduct.

### C. Damages

Since MVP's response fails to identify where in the Amended Complaint it has alleged what damages were caused by Defendants' conduct, or how, Defendants rest on their arguments made in the Memorandum in Support of their Motion to Dismiss the Amended Complaint. Dkt. 33 at 11-12.

## CONCLUSION

For the foregoing reasons, the Court should reject the reasoning in Plaintiff's Response and should grant Defendants' Motion to Dismiss the Amended Complaint.

Respectfully Submitted,

PHILIP ATETO, BARKHA BHANDARI, JOEL DAVIS, KIDUS GIRMA, KLEA HAZIZAJ, DEVORA KLIONSKY, CHRISTIAN SHUSHOK SLOAN TOUCHET, ASHLEY STECHER WAGNER, AND BRYNN WEST

By:      /s/ Kira A. Kelley
Kira A. Kelley, *Pro Hac Vice*
MN Bar: 402932
Climate Defense Project
P.O. Box 7040
Minneapolis, MN 55407
Email: kira@climatedefenseproject.org
Telephone: (802) 683-4086

     /s/ Paul G. Beers
Paul G. Beers (VSB # 26725)
Glenn, Feldmann, Darby & Goodlatte
111 Franklin Road, S.E., Suite 200
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone: (540) 224-8000
Facsimile: (540) 224-8050
Email: pbeers@glennfeldmann.com

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2024, I electronically filed the foregoing Reply to Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

     /s/ Kira A. Kelley
Kira A. Kelley