IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 7:23-cv-00809 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| PHILIP ATETO, *et al.*, | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Mountain Valley Pipeline, LLC (MVP), brings claims against ten individuals who allegedly interfered with MVP's work constructing its natural gas pipeline. Pending before the court is defendants' motion to dismiss, which is fully briefed and was argued before the court. For the reasons set forth herein, the court will deny the motion to dismiss.

I. BACKGROUND

MVP, a natural gas company, holds a certificate from the Federal Energy Regulatory Commission (FERC) to construct and operate a new natural gas pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia. (Am. Compl. ¶ 2, Dkt. No. 28.) Work began on the pipeline in 2017, but various aspects of the MVP Project have been challenged in numerous lawsuits. On June 3, 2023, the Fiscal Responsibility Act of 2023 (the 2023 FRA) became law. In that Act, Congress declared that timely completion of the MVP project is required in the national interest, and Congress ratified and approved all authorizations for completion of the project. (*Id.* ¶ 3 (citing Pub. L. No. 118-5, 137 Stat. 10, at § 324(b) (c) (2023)).) *See also Appalachian Voices v. U.S. Dep't of the Interior*, 78 F.4th 71, 75–76 (4th Cir. 2023) (explaining some MVP-related aspects of the 2023 FRA).

The pipeline's FERC-approved route includes a crossing of approximately 3.5 miles in

the Jefferson National Forest (JNF) in Monroe County, West Virginia, and Giles and Montgomery Counties, Virginia.  (Am. Compl. ¶ 9.)  Between May and July 2023, two government agencies, (1) the United States Department of Agriculture, United States Forest Service (USFS), and (2) the United States Department of Interior, Bureau of Land Management (BLM), issued Records of Decision approving the Right of Way Grant and Temporary Use Permit to MVP to cross the JNF.  At the time of the events giving rise to this lawsuit, MVP was operating in the JNF pursuant to a Right of Way Grant, a Temporary Use Permit, and a Right of Way Closure Order.  (*Id.* ¶¶ 10–13, Exs. 1–5.)  *See generally United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 611 (2020) (discussing the authority and the process by which the Forest Service grants rights-of-way to pipelines).

MVP alleges that defendants and others were involved in a "direct action campaign aimed at stopping the project by unlawful means."  (*Id.* ¶ 14.)  One of the tactics used in that "campaign" was for protestors to enter an MVP right of way and either place themselves around or in front of equipment or attach themselves to equipment or the ground through sleeping dragon devices.[1]  (*Id.* ¶¶ 15–16.)

---

[1]  There are different configurations for such a device, but in general terms,

> [a] "sleeping dragon" is used to slow the removal of a protestor from a protest location. A long metal pipe is secured in an immoveable object and the protester places their arm in the metal pipe. The arm is locked into place with a carabiner that is tied to the protester's wrist. This set up enables protestors to unlock themselves, but prevents others from doing so. The metal pipe also prevents others from using bolt cutters to remove the protestor.

Christopher Rusnak, K.C. & Evelyn Rusnak, *In Defence of the Trees: Presenting the Case for Ancient Forest Rights*, 41 UCLA J. Env't. L. & Pol'y 361, 410 (2023).  Below is one possible configuration:



Alli Graham, *Mountain Valley Pipeline Protestors Charged After Using "Sleeping Dragon" to Attach Themselves to Equipment*, https://www.wsls.com/news/local/2023/09/05/mountain-valley-pipeline-protestors-charged-after-using-sleeping-dragon-to-attach-themselves-to-equipment/  (Sept. 5, 2023) (image credited to Virginia State Police).

On October 16, 2023, defendants entered the right of way in JNF in Giles County.  They surrounded equipment, blocked work, and defendant Ashley Stetcher Wagner, "supported by defendants and other unlawful protestors," attached herself to equipment on the right of way using a sleeping dragon device.  (*Id.* ¶¶ 17–21.)  Defendants blocked and prevented work until removal by law enforcement.  Wagner "had to be extracted from the sleeping dragon device by law enforcement."  (*Id.* ¶ 21.)

MVP asserts that defendants acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and work allowed under the Right of Way Grant, Temporary Use Permit and the Closure Order.  (*Id.* ¶¶ 21–22.)  MVP claims that defendants caused it to incur damages, costs, and attorneys' fees, and it also seeks injunctive relief, including permanent injunctive relief.  (*Id.* ¶¶ 23–24.)

MVP's amended complaint invokes federal-question jurisdiction under 28 U.S.C. § 1331. (*Id.* ¶ 5.)  It posits that the action "involves the application, interpretation, and enforcement" of the two Records of Decision, as well as the Right of Way Grant, Temporary Use Permit, and Closure Order.  (*Id.* ¶ 6.)  It also points to the 2023 FRA as "expressly supersed[ing] any law that is inconsistent with these authorizations."  (*Id.* ¶ 7.)

MVP asserts the following claims, and all of them name all defendants:

> Count One – interference with MVP's easement and authorized work;
> Count Two – common law conspiracy; and
> Count Three – statutory conspiracy under Virginia Code § 18.2-499A.

(*See generally* Am. Compl.)

## II.  DISCUSSION

In their motion to dismiss the amended complaint, defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants' motion to dismiss for lack of jurisdiction under Rule 12(b)(1) argues that this court does not have jurisdiction over any of

MVP's claims, which  defendants characterize as state-law claims.

Defendants also argue that the amended complaint is subject to dismissal in its entirety under Rule 12(b)(6) for two primary reasons.  First, they contend that Count One—interference with an easement—fails to state a claim because a claim of easement interference is allowed in Virginia only against the servient landowner, not a third party.   Because defendants are not the servient landowners, their argument continues, they have no duty to MVP and thus cannot be held liable in tort to MVP.  Second, defendants assert that Counts Two and Three fail to state claims for conspiracy because both fail to adequately allege the existence of a conspiratorial agreement and resulting damages.  MVP opposes the motion, asserting that the court has jurisdiction over its claims and that it has adequately pled its claims.

## A.  Defendants' Motion to Dismiss Under Rule 12(b)(1) for Lack of Jurisdiction

### 1.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the court's subject matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing that jurisdiction exists.  *Evans* v. *B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  The court must "view[ ] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Zeigler v. Eastman Chem. Co.*, 54 F.4th 187, 194 (4th Cir. 2022) (quoting *Evans*, 166 F.3d at 647).

As noted, MVP has invoked this court's jurisdiction under 28 U.S.C. § 1331, which confers on federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  In its jurisdictional statement, MVP's amended complaint states that the action "involves the application, interpretation, and enforcement" of (1) the

USFS's May 15, 2023 Record of Decision approving the Right of Way Grant and Temporary Use Permit to MVP to cross the JNF (Am. Compl., Ex. 1); (2) the BLM's May 17, 2023 Record of Decision authorizing the Right of Way Grant and Temporary Use Permit (*Id.*, Ex. 2); (3) the BLM's June 20, 2023 Right of Way Grant and Temporary Use Permit for the MVP Project issued by the U.S. Bureau of Land Management (*Id.*, Exs. 3, 4); and (4) the July 1, 2023 Closure Order entered by the USFS  (*Id.*, Ex. 5.)  (Am. Compl. ¶ 6.)  MVP also identifies the statutes pursuant to which those documents were issued or entered, and it points to the 2023 FRA.  (*Id.* ¶¶ 6–7.)

The Supreme Court has explained that the "vast majority" of cases conferring jurisdiction under § 1331 are ones in which "federal law creates the cause of action."  *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  In other cases, a claim may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Id.* at 808–09 (citation omitted).

MVP claims that the court has jurisdiction under either species of § 1331 jurisdiction. MVP's primary argument is that its claims are federal claims and are governed by federal law, although it does not identify under what specific law its claims arise, and at least one of them— Count III—is expressly premised on a Virginia statute.  In support of this argument, MVP points to the significant federal ties to its pipeline and to this portion of the route, in particular.  These ties include that: (1) the pipeline is a project specifically approved by Congress in the 2023 FRA; (2) the defendants' actions took place on MVP's easement in the JNF, over which the state and the federal governments have concurrent jurisdiction; and (3) defendants, by entering onto MVP's easement and disrupting its work, also violated the Closure Order issued by the federal government.  It contends that jurisdiction exists because "a suit for violation of a federal easement and a federal closure order is a federal cause of action."  (Opp'n to Mot. Dismiss 2,

5

Dkt. No. 37.)

For their part, defendants argue that the elements of an easement interference claim do not require proof of the legal integrity of the process by which the easement was originally conveyed. Thus, they submit that it is irrelevant and undisputed how MVP gained its easement and that the federal statutes pursuant to which they were obtained (identified by MVP as 30 U.S.C. § 185 and 16 U.S.C. § 551) are not at issue. Although defendants acknowledge that the rights-of-way granted and the use permit are property agreements between the federal government and MVP, they contend that MVP's claims can be analyzed under state property law and require no reference to federal law.[2] At argument, they distinguished MVP's claims from a motion to quiet title, for example, or other claims that might involve a challenge to the conveyance itself.

Defendants acknowledge the general language in some of the cases cited by MVP, stating that a dispute over an easement on federal land is governed by federal law. *See, e.g.*, *McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008) ("Federal law governs a claim of easement over lands owned by the United States."); *Montana Mine Land Holdings, LLC v. U.S. Dep't of Agric.*, No. 17-cv-65, 2018 WL 1640866, at *2 (D. Mont. Apr. 5, 2018) (acknowledging that easements are an integral part of state law but explaining that "the rules regarding easements over lands of the United States are substantially different from the rules applicable to private property"). Defendants point out, however, that those cases did not address the jurisdictional issue before this court, and specifically, whether claims like those here—which defendants refer to as Virginia-law claims—were *created by* any federal law. In their reply, defendants focus on the possible source of federally created rights—the "Right of Way Grant and the Temporary Use

---

[2] Defendants also note that the mere fact that FERC authorized the easement does not give MVP the right to sue in federal court, but MVP does not argue otherwise.

Permit"—and they claim that neither is a federal law and that a claim of interference with either does not arise under federal law. Similarly, as to the Closure Order, defendants contend that it provides no rights *to MVP* and does not confer a private cause of action upon MVP. They therefore suggest that the USFS may be able to enforce the closure order in a federal court, but MVP cannot. As a result, jurisdiction cannot be based on it, either.

The court need not determine today whether MVP's claims are causes of action "created by federal law." Instead, the court assumes, without deciding, that defendants are correct and that MVP's claims are all state-law claims. Even under that assumption, at least MVP's claim of interference-with-easement provides the court with federal-question jurisdiction under the so-called *Gunn-Grable* framework,[3] which addresses the second type of jurisdiction discussed in *Merrell Dow Pharmaceuticals, Inc.* Thus, the court does not reach MVP's primary argument that its claims (or at least one or more of them) is a cause of action created by federal law. It also does not reach any conclusion as to whether federal enclave jurisdiction exists.[4]

> 2. The Gunn-Grable *Framework*

The *Gunn-Grable* framework provides a basis for federal-question jurisdiction in some limited circumstances, even when a plaintiff's claims are state-law claims. In *Gunn*, the Supreme Court summarized that "federal jurisdiction over a state law claim will lie if a federal

---

[3] *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfr.*, 545 U.S. 308, 312 (2005); *Gunn v. Minton*, 568 U.S. 251 (2013).

[4] MVP referred in its opposition to the Enclave Clause of the Constitution, U.S. Const., Art. I, § 8, cl. 12, which allows the United States to acquire jurisdiction of land in a state with the state's consent and on which federal enclave jurisdiction is based. The Ninth Circuit has described this "narrow[]" doctrine as based on the "principle that federal law applies in federal enclaves." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 1795 (2023). To apply, the claim "must allege that an injury occurred on a federal enclave or that an injury stemmed from conduct on a federal enclave . . . [a]nd the connection between injuries and conduct must not be 'too attenuated and remote.'" *Id.* (internal citations omitted); *see also Hall v. Coca-Cola Co.*, No. 2:18cv244, 2018 WL 4928976, at *3 (E.D. Va. Oct. 11, 2018) (explaining the requirements for federal enclave jurisdiction). Some courts also require that the federal government have *exclusive*—not concurrent—jurisdiction over the land. *E.g.*, *Lake v. Ohana Mil. Communities, LLC*, 14 F.4th 993, 1003–04 (9th Cir. 2021).

issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 568 U.S. at 258. Jurisdiction will lie only if all four requirements are satisfied. *Id.*

It is clear from the cases cited by both parties, and their argument on them, that this is a fact-intensive inquiry and that the court must focus on the specific claims and facts of the case before it. The court here analyzes only MVP's first claim of interference-with-easement, which it concludes satisfies all four of the *Gunn-Grable* requirements.[5]

> a. *The first requirement—a federal issue is "necessarily raised"*

First, the court concludes that a federal issue is "necessarily raised" by MVP's interference-with-easement claim. Although neither party has pointed the court to a Virginia case specifically listing the elements of such a claim, at a minimum, it will require the court to examine what rights the easement creates and then determine whether defendants' actions breached those rights. (*See also* Mem. Supp. Mot. Dismiss 2, Dkt. No. 33 (setting forth a similar test and relying on *Ortiz v. Flattery*, 63 Va. Cir. 309, 2003 WL 22785031, at *3 (Fairfax Cnty. Cir. Ct. 2003)).)[6]

To determine the rights and duties of MVP's easement over the JNF, the court will be required to interpret, at the very least, the documents creating the easement and the rights MVP has under it, which—based on the complaint—will require examination of at least the Right of

---

[5] If even one of MVP's claims confers § 1331 jurisdiction, then the court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. Further, while it may have been a better practice for MVP to invoke jurisdiction under § 1367 in its amended complaint, MVP's failure to do so does not preclude the court from exercising it. *See Mendoza v. Murphy*, 532 F.3d 342, 345–46 (5th Cir. 2008); *Voyticky v. Village of Timberlake*, 412 F. 3d 669, 674–75 (6th Cir. 2005).

[6] In *Ortiz*, the court also discussed whether the defendant (the servient landowner) breached a duty owed to plaintiff, and defendants argue from this that there can be no such tort against a third party who interferes with an easement because a third party owes no duty. As discussed *infra* at Section II.B.2, however, the court concludes that an easement holder may assert the claim against a third party.

Way Grant and Temporary Use Permit. (Am. Compl., Exs. 3-5, Dkt. Nos. 28-3 to 28-5.) These documents provided rights directly from federal agencies to MVP over federal land. The court also may have to review the Closure Order.[7]

Defendants maintain that the easements can be interpreted under state law and thus no federal issue is "necessarily raised." In their opening memorandum, the only case defendants relied upon for this proposition was *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 304 (4th Cir. 2016), which analyzed the claims before it under the *Gunn-Grable* framework.[8] In *Pressl*, landowners on Smith Mountain Lake filed suit in state court against Appalachian Power Company (APCO), seeking a declaration of their rights to build a dock on their property subject to the utility's flowage easement. APCO removed the case to the Western District of Virginia, claiming that federal jurisdiction existed because the property was "within the project boundary for APCO's Smith Mountain hydroelectric project," which APCO "operate[d] under a license issued by" FERC. *Id.* at 302. The district court denied the landowners' motion to remand.

On appeal, the Fourth Circuit reversed, concluding that federal-question jurisdiction was lacking. To reach its conclusion, the appellate court analyzed the claims under the *Gunn-Grable* framework and held that the claims did not arise under federal law because they did "not necessarily raise any federal issue." *Id.* at 304. In particular, the Court explained that the case might be able to be resolved by looking solely at the language of the easement, which implicated no federal issue, right, or law, and thus the dispute might not even require reference to APCO's FERC license.

---

[7] The closure order contains a map with the specific locations of the closed areas, and it prohibits persons other than those specifically exempted from being present in those areas while in effect. (*See generally* Am. Compl. Ex. 5, Dkt. No. 28-5.)

[8] The appellate court first held (as APCO admitted) that the suit did not involve a federal cause of action. *Id.* at 303.

As the *Pressl* court itself noted, its ruling was consistent with other cases in which courts found that subject-matter jurisdiction was lacking where a claim required the interpretation of an easement over privately owned land between two private entities, even if one of those entities was operating a federally licensed or federally regulated project. *Id.* at 304–05 (discussing *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 559 (4th Cir. 1999) and *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 589–90 (6th Cir. 2013)). Resolving the dispute might only require a "tangential reference to federal law," *i.e.*, to note that APCO operated the dam pursuant to FERC regulations, and that did "not suffice to create 'arising under' jurisdiction." *Id.* at 305. Put differently, although federal regulations were "tangential[ly]" involved, the case could be resolved without enforcement of a federal instrument or an interpretation of a federal law. *Cf. also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) (reasoning that because the Federal Power Commission's issuance of certificates of convenience and necessity to a third party were relevant only via a possible *defense*, the FPC's actions were not *necessary* to plaintiff establishing its claim).

This case is altogether different. Here, the court will necessarily have to look at the scope and nature of the Right of Way and Temporary Use Permit in order to determine the scope and nature of MVP's property rights and whether defendants' actions interfered with them, and those rights were given by a federal entity and concern federal land. Those documents themselves reference federal regulations and laws. (Am. Compl., Exs. 3, 4.) And, as the authority discussed above indicates, "[f]ederal law governs a claim of easement over lands owned by the United States." *McFarland*, 545 F.3d at 1110; *Montana Mine Land Holdings, LLC*, 2018 WL 1640866, at *2; *see also Samuel C. Johnson 1988 Tr. v. Bayfield Cnty.*, 649 F.3d 799, 801 (7th Cir. 2011) ("[B]ecause the property was once owned by the federal government and the plaintiffs ultimately base their suit on the terms of the original federal grants, the suit may be said to arise under

10

federal law as well."); *Beres v. United States*, 104 Fed. Cl. 408, 443 (2012) ("'[T]he construction of grants by the United States is a federal not a state question,' and 'involves the consideration of state questions only in so far as it may be determined as a matter of federal law that the United States has impliedly adopted and assented to a state rule of construction as applicable to its conveyances.'") (quoting *United States v. Oregon*, 295 U.S. 1, 27–28 (1935)).

As defendants note, some of the cases cited in the preceding paragraph discuss that federal law applies but do not address *jurisdiction* at all. Moreover, in some of those cases— including *McFarland* and *Montana Mine Land Holdings*—"federal law (not federal land) provided the basis for at least one claim for relief." (Reply 4–5, Dkt. No. 40.) Nonetheless, because those cases support that federal law applies to determine the validity and scope of MVP's easement, then its claim "necessarily involves" a federal issue and cannot be determined without reference to that federal law. Thus, the court concludes that, in contrast to *Pressl*, this case necessarily involves interpretation of federal law.

The court's conclusion is further supported by other cases cited by MVP for the proposition that a federal issue is "necessarily raised." The first is *VA Timberline, LLC v. Appalachian Power Co.*, No. 4:06-cv-26, 2006 WL 1993557, at *1 (W.D. Va. July 13, 2006). The plaintiff in that case held a private easement in land adjacent to a lake, and that land was owned by one of the defendants, a private party, and by APCO. Plaintiff filed in state court, seeking a declaratory judgment determining its rights under the easement. Defendants removed the case. The parties agreed that the easement was subject to the terms and conditions of a license issued to APCO by FERC, and that the instrument conveying the easement incorporated the license by reference. They disputed whether the terms of that license permitted them to construct certain boat docks. The court held that it had jurisdiction because the federal license was incorporated by reference into the plaintiff's easement agreement and would have to be

interpreted under federal law. *Id.* at *2.

MVP also relies on *Tri-Dam v. Frazier*, No. 1:20-cv-408, 2021 WL 3857649, at *8 (E.D. Cal. Aug. 30, 2021), *aff'd*, No. 22-15246, 2023 WL 3193592 (9th Cir. May 2, 2023). *Tri-Dam* involved similar factual circumstances as *Pressl*, but with some notable differences, as pointed out by the *Tri-Dam* court. In *Tri-Dam*, the plaintiff was a dam operator with a FERC license and a flowage easement on defendant's property. Defendant built facilities without following the proper permitting program, and plaintiff sued for a public nuisance. Applying *Gunn-Grable*, the court held that jurisdiction existed.

The *Tri-Dam* court explained that the case was distinguishable from *Pressl* because the *Pressl* court was not required to look beyond the plain language of the easement—one between two private parties—to determine its scope. By contrast, the FERC-approved Shoreline Management Plan (SMP) in *Tri-Dam* was essential to plaintiff's public nuisance claim, in part because the county code there held that failure to comply with the SMP was a public nuisance per se. Thus, the nuisance claim necessarily turned on interpretation of the SMP, a federal instrument. *See also Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006) (holding that jurisdiction existed under *Gunn-Grable* where private landowners were suing a railroad that obtained rights-of-way under federal land-grant statutes, claiming that the railroad's actions exceeded their rights under the federal land-grant statute), *possible abrogation on other grounds recognized in Gilmore v. Weatherford*, 694 F.3d 1160, 1175 n.3 (10th Cir. 2012)). Consistent with those cases, MVP's claim will "necessarily turn[] on interpretation of the" easement itself, *i.e.*, the conveyances from federal agencies—the Right-of-Way and Temporary Use Permit.

### b. *The second requirement—a federal issue is "actually disputed"*

Turning to the second *Gunn-Grable* factor, the court also concludes that the federal issue

is "actually disputed."  The court's determination of what issues are disputed between the parties is slightly hampered by the fact that only motions to dismiss have been filed and no answers.  As a result, the court is unsure exactly what defenses will be raised or what defendants' factual or legal defenses are (other than those raised in the motion to dismiss).  For example, perhaps defendants will contend that the Temporary Use Permit or Closure Order was improper or invalid, or perhaps they will claim that they did not violate MVP's rights under those documents, or perhaps defendants will claim that they were not physically present on the right-of-way or within the closure area, but outside its borders.  Indeed, as MVP notes in its opposition, "defendants do not concede the enforceability of MVP's easement, nor do they concede MVP's right to use the easement free from interference by defendants.'"  (Opp'n to Mot. Dismiss 9.)  Nor do defendants concede the *scope* of MVP's easement.

Regardless of any defense, though, MVP will be required to prove its claim, which will include proving the scope of its rights under the federal grants (governed by federal law) and that defendants interfered with those rights.  Presumably, defendants intend to dispute one or both of those elements of MVP's claim on some basis, and they have not offered any construction by which they could dispute *something* and MVP could nonetheless succeed without the court's having to refer to federal law.  Accordingly, the court concludes that the federal issues raised by the interference-with-easement claim are actually disputed.[9]

---

[9]  The parties do not spend much time discussing the "actually disputed" requirement, and neither MVP nor defendants cites any law discussing it.  MVP simply emphasizes defendants' failure to concede any aspect of the claims, and defendants retort that their "alleged conduct outside of court cannot raise a federal question by implication any more than Defendants' filings can."  (Pl.'s Reply 8, Dkt. No. 40.)  The court's own research shows that generally the disputed issues in a case are more clear (either because the defendants state what they are disputing, admit certain issues are disputed or undisputed, or because the claims required a showing that federal law was violated).  *See Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 148–49 (W.D.N.Y. 2019) (collecting authority regarding this element).  Because they dispute their liability to MVP, defendants are necessarily disputing some aspect of MVP's claim, to which federal law applies.

*c. The third requirement—a federal issue is substantial*

Third, the court concludes that the federal issue is "substantial," a factor defendants do not address in their reply. In part, this stems from the fact that all of the permissions given to MVP are from federal entities, but also that the actions took place and the injuries allegedly occurred in the JNF, over which the state and the federal government exercise concurrent jurisdiction. In addition to the cases cited by MVP that point to the fact that the regulations of projects like natural gas pipelines and hydroelectric dams are substantial, the court also takes judicial notice of the 2023 FRA, which states that the completion of MVP's pipeline is in the "national interest." Interference with that work, therefore, likewise implicates the "national interest," according to Congress.

*d. The fourth requirement—the federal issue is capable of resolution in federal court without disrupting the federal-state balance approved by Congress*

Fourth and finally, the court concludes that the issues here are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." This last factor is perhaps the easiest of the four. Given the fact that these incidents occurred on federal land, that the state and federal government already share concurrent jurisdiction over the land, and that MVP's easement, where defendants allegedly interfered, was created through federal grants from federal agencies, the court sees no way in which this court's exercise of jurisdiction would disrupt the federal-state balance.

For the foregoing reasons, the court concludes that it has jurisdiction over at least the first of MVP's claims. It also may properly exercise jurisdiction over the other claims pursuant to 28 U.S.C. § 1367. Accordingly, the court will deny defendants' Rule 12(b)(1) motion.

**B. Defendants' Motion Under Rule 12(b)(6).**

Having determined that this court may properly exercise jurisdiction over this case, the

14

court turns next to defendants' arguments under Rule 12(b)(6).

    *1. Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences in the complaint "in the light most favorable to the nonmoving party." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. The court also may consider documents incorporated by reference into the complaint and "matters of which a court may take judicial notice." *Kashdan*, 70 F.4th at 700 (citation omitted).

    *2. MVP has stated a claim for interference with its easement.*

Defendants first argue that an interference-with-easement claim in Virginia may only be brought by the easement holder against the servient landowner, and not against any third party. Thus, they claim Count I must be dismissed because it does not state a valid claim. The court already has rejected this argument in another, similar case, and it does so again here. *See* Minute Order, *Mountain Valley Pipeline v. Guidry*, No. 7:23-cv-00727 (W.D. Va. Mar. 4, 2024), ECF No. 15; Transcript of Hearing at 29, *Guidry*, No. 7:23-cv-00727, ECF No. 27 (setting forth grounds for ruling). It briefly restates its rationale on the issue.

Defendants note that MVP cited only four cases on this issue and that three of them stand for the "general (and undisputed) principle that easements are property rights entitled to protection." (Reply 10, Dkt. No. 40.) The fourth is an 1846 case from the Supreme Court of

Pennsylvania, which allowed claims of trespass or nuisance against a third-party intruder on an easement, but it still did not allow an "interference with easement" claim. They further note that Virginia law "suggests that the rights in an easement are actionable only against the servient landowner." (*Id.* (citing *Ortiz v. Flattery*, 63 Va. Cir. 309, 2003 WL 2278503, at *3 (Va. Cir. Ct. 2003).)

Defendants' reliance on *Ortiz* is misplaced. Although *Ortiz* refers to the duty owed by the servient landowner, it does not contain any language limiting such claims *only* to the servient landowner; that just happened to be the factual circumstances before it. And it is simply inaccurate to contend that there is no possible tort liability absent a "duty" specifically conveyed by whatever means the easement was created. While a "duty" underlies negligence claims, intentional torts and similar types of property-related torts are more generally based on an intent to cause harm, and do not include "duty" as an element. *See, e.g.*, *Va. Prac. Tort & Personal Injury Law* §§ 2:7 (discussing battery); 2:10 (assault); 2:15 (trespass to land); 2:16 (intentional infliction of emotional distress); § 8:4 (private nuisance).

For its part, MVP also cites to several secondary sources stating or suggesting that an easement holder is protected against interference by third parties:

> An easement holder . . . "is entitled to protection from acts of third parties that interfere with enjoyment of the easement. Such protection is available against third parties to the same extent that it is available against the servient estate owner." Jon W. Bruce, et al., *The Law of Easements & Licenses in Land § 8:33 (March 2024 Update);* see *Williams v. Esling*, 4 Pa. 486, 488 (1846) ("[T]he grant of a way is exclusive, at least as to strangers; and . . . every intrusion into the enjoyment of an exclusive right subjects the wrongful participant to an action by the owner of it."); *Restatement (First) of Property* § 450 (1944) ("An easement is an interest in land in the possession of another which . . . . entitles [the easement holder] to protection as against third persons from interference in such use of enjoyment.").

(Opp'n to Mot. Dismiss 13.)

16

To be sure, MVP has not presented overwhelming authority in support, at least as to case law.  But the secondary sources seem to be in agreement.  By contrast, defendants' briefing cites no secondary sources and no cases—in any jurisdiction—holding that such a claim is *not* permitted.  In related, similar cases pending before this court, which briefed motions to dismiss after briefing here, defendants relied upon *Hogan v. Cnty. of Lewis*, No. 7:11-CV-0754, 2015 WL 1400496 (N.D.N.Y. Mar. 26, 2015).  *Hogan* dismissed an interference-with-easement claim, stating that the plaintiffs before it had "provided no authority that someone other than the servient estate holder may be liable for damages in an interference with easement cause of action."  2015 WL 1400496, at *6.  Thus, this case provides at least some support for defendants' argument.  But while the plaintiffs there were not able to cite any authority, at least one New York case recognized a valid interference-with-easement claim brought against a third party.  *Bloomingdales, Inc. v. N.Y. City Transit Auth.*, 52 A.D.3d 120, 125–26 (N.Y. App. Div. 2008), *aff'd*, 915 N.E.2d 608 (N.Y. 2009) (holding an easement holder was entitled to seek damages against a third party for interference with its easement).  And here, MVP has cited to at least one case in addition to a number of secondary sources discussing the rights of easement holders.  On balance, the court is persuaded by MVP's authority.  Dismissal of Count One is not warranted.

3. *MVP has adequately stated a claim for common law conspiracy and statutory conspiracy.*

Defendants also argue that MVP has failed to adequately plead common law or statutory conspiracy under Virginia law.  In so arguing, defendants insist that the conspiracy claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9.  MVP counters by pointing to several decisions seemingly indicating that conspiracies involving *fraud* are subject to the heightened pleading standard of Rule 9, but that conspiracies not involving fraud

17

must simply satisfy Rule 8.[10]

   a.  *A heightened pleading standard applies to conspiracies only where the conspiracy involves fraud, and it does not apply here.*

Turning first to the issue of the proper pleading standard, there does not seem to be a consistent answer among district courts within the Fourth Circuit, or even within the same court. *Compare, e.g.*, *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 425 (E.D. Va. 2018) (holding conspiracy must be pled with particularity) *with Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 825–26 (E.D. Va. 2013) (noting that some courts have held "business conspiracy, like fraud" must be pleaded with particularity, but concluding that only conspiracy counts based on fraud are subject to Rule 9(b)); *see also Alliance Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12CV701-HEH, 2013 WL 143500, at *9–*10 & n.7 (E.D. Va. Jan. 11, 2013) (evaluating most of plaintiff's claims, including Virginia common law and statutory conspiracy claims, under Rule 8, but evaluating a different conspiracy claim that involved fraud under Rule 9).[11]

The court is more persuaded by those courts, like *Harrell* and *Alliance Technology Group*, that have held it is only conspiracy cases *based on fraud* that are subject to Rule 9's pleading requirements.  Most importantly, the court's conclusion aligns with the text of Rule 9, which states that only "fraud and mistake" must be pled with particularity, but not other aspects of a claim, including other "condition[s] of mind," which "may be averred generally."  Fed. R.

---

[10]  Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 9, by contrast, in a subsection labeled "Fraud or Mistake; Conditions of Mind," states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[11]  Defendants also cite to a Virginia state case for the same principle.  *Thornlea Real Est. Ventures, LLC v. Va. CU Realty LLC*, 2021 Va. Cir. LEXIS 24, *11 (Va. Cir. Ct., Feb. 15, 2021) ("Under Virginia law, both statutory and common law conspiracy claims must be pled with particularity and not mere conclusory language.") This court, however, applies federal pleading requirements, not Virginia ones.  *See Daniczek v. Spencer*, 156 F. Supp. 3d 739, 758 (E.D. Va. 2016).  Thus, *Thornlea* does not inform this court's analysis.

Civ. P. 9(b). The rule contains no catch-all that might arguably include conspiracy. Additionally, the Fourth Circuit seems to have implicitly followed this approach in an unpublished decision—*Terry v. SunTrust Banks, Inc.*, 493 F. App'x 345, 358 (4th Cir. 2012). In *Terry*, the court applied Rule 9(b) to a civil conspiracy claim, but it appeared to do so only because fraud was involved. *Id.* ("Because this component of the . . . conspiracy claim alleges fraud, the . . . complaint must comply not only with Rule 12(b)(6) but also with Federal Rule of Civil Procedure 9(b) . . . .").

The court recognizes that some cases, including cases from this court, include a blanket statement that a heightened pleading requirement applies to conspiracy claims, without distinguishing between fraud and other types of conspiracies. Some of those, however, involved fraud, as the opinions made clear elsewhere. *E.g.*, *NetTax, LLC v. Posso Pizza, Inc.*, No. 4:23-CV-00031, 2024 WL 260501, at *11–12 (W.D. Va. Jan. 24, 2024) (stating that conspiracy must be pleaded with particularity and noting elsewhere that the conspiracy before it involved fraud, among other alleged tortious acts). Indeed, in a subsequent decision from the same judge who decided *NetTax, LLC*, the court explicitly held that conspiracy claims not involving fraud or mistake are governed by Rule 8. *Aimbridge Hosp., LLC v. Provident Grp.-Radford Props., LLC*, No. 7:24-cv-00262, 2024 WL 3534150, at *8–*9 (W.D. Va. July 24, 2024).

Further, many of these cases containing such blanket statements appear to rely on Virginia state court cases for the proposition, which applied Virginia—not federal—pleading standards. For example, in *Danville Com. Indus. Storage, LLC v. Selective Ins. Co. of S.C.*, No. 4:18CV00050, 2018 WL 6625078, at *4 (W.D. Va. Dec. 18, 2018), the court stated the proposition, with citations:

> "Plaintiff[s] must plead business conspiracy with particularity, which [they have] failed to do here." *Schlegel v. Bank of America, N.A.*, 505 F. Supp. 2d, 321, 329 (W.D. Va. 2007); *see also Gov't*

19

> *Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d, 700, 706 (E.D.
> Va. 2004) ("[B]usiness conspiracy, like fraud, must be pleaded with
> particularity, and with more than mere conclusory language. The
> heightened pleading standard prevents every business dispute
> [from] becoming a business conspiracy claim.").

2018 WL 6625078, at *4; *see also NetTax*, 2024 WL 260501, at *11 (citing *Danville Com. Indus. Storage LLC,* 2018 WL 6625078, at *4; *Gov't Emps. Ins. Co.*, 330 F. Supp. 2d at 706). When drilling down through the cases on which *Danville Commercial Industrial Storage* relied, and then the cases on which those cases relied, and continuing on, it becomes clear that this heightened pleading requirement originated in cases decided by Virginia's state courts.[12]

Notably, moreover, many of the Eastern District of Virginia cases, as well as the Virginia cases on which they rely, *see supra* note 12, predated the Supreme Court's decisions in *Twombly* (2007) and *Iqbal* (2009), which made clear that Rule 8 applies to all civil cases in federal court, unless they otherwise fall within an exception in Rule 9. Indeed, *Twombly* itself was an "antitrust conspiracy" case (under § 1 of the Sherman Act), and the court applied Rule 8.

The parties do not cite any published Fourth Circuit decisions on the issue, and the court's research revealed a few additional cases that include a statement that business conspiracy must be pleaded "with particularity," but either the issue of the proper pleading standard was not contested or the conspiracy involved fraud, or both. *E.g.*, *Wallace ex rel. DMT, LLC v. Truist Bank*, 2022 WL 1452355, at *2 (4th Cir. 2022) (unpublished) (including language of "with particularity"); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280–81 (4th Cir. 2014) (applying Rule 9(b) to a False Claims Act conspiracy claim based on fraud). *But cf. Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (citing to a D.C. Circuit case for the proposition that

---

[12] *See, e.g., Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). *Bowman* was cited for the proposition in *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999), which was then quoted in *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003), on which *Schlegel* relied. Likewise, *Government Employees Insurance Co.*, relied on the *Bay Tobacco* case.

a conspiracy must be pled with particularity, but in the context of discussing a "conspiracy theory of [personal] jurisdiction").

The court has carefully considered the relevant authority discussed herein. In the absence of a Fourth Circuit case directly on point—either discussing the issue or applying Rule 9 to a Virginia conspiracy claim *not* based on fraud or mistake—the court concludes that only conspiracies involving fraud or mistake are subject to Rule 9's heightened pleading requirements. In conspiracy cases *not involving fraud*, like this one, the court will apply Rule 8's general pleading standard.

> b. *MVP has adequately pled the elements of common law conspiracy (Count Two) and statutory conspiracy (Count Three)*

In Virginia, a plaintiff states a claim for common law conspiracy by alleging that the defendants combined either to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff. *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995). The elements have been described as (1) an agreement between two or more persons (2) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (3) results in damage to the plaintiff. *William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014) (citation omitted). To establish the "unlawful" element, at least one member of the conspiracy must commit an "underlying tort." *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007).

A Virginia statutory conspiracy claim has similar elements. They are that: (1) "two or more persons who combine, associate, agree, mutually undertake or concert together," (2) "for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever"; and (3) cause injury to the plaintiff in "reputation, trade, business[,] or profession" through their acts. Va. Code Ann. §§ 18.2-499, 18.2-500; *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014). Furthermore, a Virginia

21

statutory conspiracy claim requires that the concerted action be "to accomplish some criminal or unlawful purpose" or use "criminal or unlawful means." *Heckler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985).

MVP's amended complaint alleges sufficient facts to plausibly state both types of conspiracy. Defendants first argue that MVP has failed to allege a "preconceived" plan, predating the challenged conduct. They challenge:

> No mention is made of who particularly agreed to the "plan to attach Wagner to equipment[,]" when or how this "plan" was devised, by what means the unspecified co-conspirators agreed to it, or any other details that might support a plausible inference that Defendants were co-conspirators who agreed to this "plan" rather than people holding signs and posting on social media at a protest at which one Defendant chose to lock down to a piece of construction equipment.

(Mem. Supp. Mot. Dismiss 9, Dkt. No. 33.)

The court disagrees that MVP has failed to plausibly plead a preconceived plan. Its amended complaint includes allegations that defendants are participants in a "direct action campaign" designed to stop MVP's pipeline by unlawful means, that defendants entered MVP's right-of-way in the JNF on the same date, surrounded equipment and blocked work, and that one of the defendants, Wagner, "supported by defendants and other unlawful protestors, attached herself to equipment." It alleges that the defendants "formed a plan and agreement" to attach Wagner to equipment with a sleeping dragon device; that together with other unlawful protestors, defendants carried out the plan by constructing and transporting the sleeping dragon device and arranging for Wagner to have supplies and a sign; and that she could not have carried out the attachment without assistance. Those facts plausibly suggest a preconceived plan by defendants to attach Wagner to equipment with a sleeping dragon device to stop MVP's work.

The third and final element to both claims is that the actions of the conspirators damaged MVP. Defendants contend that MVP has failed to plead particularized damages or injury from

the conspiracy. Again, the court disagrees that MVP has failed to adequately plead damages. While true that MVP does not set forth any specific value of damages or a length of the delay caused, MVP expressly alleges that the unlawful action "interfered with work on the project," "caused MVP to suffer substantial delays and expenses," and that "MVP has sustained damages" as a "direct and proximate result" of defendants' actions. Moreover, some of the facts support these more general statements. For example, MVP also alleges that work was stopped until law enforcement could arrive and remove defendants from the site and Wagner from the sleeping dragon device.

In short, although the details are not robust, the court concludes that MVP has plausibly alleged damages as a result of defendants' actions, at least sufficient to satisfy Rule 8.

***

For the forgoing reasons, the court finds that MVP has sufficiently alleged both of its conspiracy claims, and it will deny the motion to dismiss those claims.

### III.  CONCLUSION

For the foregoing reasons, the court will deny the motion to dismiss. An appropriate order will be entered.

Entered: March 17, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge